UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

JERMAINE EDWARD CASEY,

        Petitioner,

   v.

JULIE BROWN, Warden,

        Respondent.
                          /

No. C 04-4749 PJH (PR)

**ORDER DENYING PETITION FOR WRIT OF HABEAS CORPUS**

      This is a habeas corpus case filed pro se by a state prisoner pursuant to 28 U.S.C. § 2254. The court ordered respondent to show cause why the writ should not be granted. Respondent has filed an answer and a memorandum of points and authorities in support of it, and lodged exhibits with the court. Petitioner did not file a traverse. For the reasons discussed below, the petition is DENIED.

## BACKGROUND

      A Sonoma County jury convicted petitioner of kidnaping to commit rape, *see* Cal. Penal Code § 209(b)(1); two counts of forcible rape, *see id.* at § 261(a)(2); and attempting to prevent and dissuade the victim from reporting the crimes, *see id.* at § 136.1(b)(1). Ex. E (opinion of the California Court of Appeal) at 1. The court found to be true the enhancing allegations that he had suffered two previous "strike" convictions, two prior "violent felony" prison convictions, and one prior forcible sex offense conviction. *Id.* He was sentenced to a prison term of 133 years to life. *Id.* The California Court of Appeal affirmed petitioner's conviction, and the California Supreme Court denied his application for review.

      As grounds for habeas relief, petitioner asserts that: (1) His due process rights and Sixth Amendment Confrontation Clause rights were violated when the trial court refused to

let his attorney question a witness regarding her previous accusations of sexual assault against others; (2) the trial court violated his due process rights by allowing the testimony of two witnesses concerning prior acts of sexual assault by the petitioner under section 1108 of the California Evidence Code; and (3) the trial court violated his due process rights by not permitting the jury to consider conviction on the lesser included offense of unlawful sexual intercourse.

The following facts are taken from the opinion of the California Court of Appeal.

> The evidence at trial indicated that on July 20, 2002, 15-year-old Serena was alone in the trailer she shared with her mother and sister. She went to the trailer park's washroom, and there saw defendant, whom she recognized as the "sort of" stepfather of her friend Carolyn. Defendant told her Carolyn wanted to talk with her. After returning briefly to her own home, Serena went to the door of defendant's trailer and asked him to tell Carolyn to come outside. Defendant grabbed Serena's arm, pulled her into the trailer, and told her to go into the back room and take off her clothes. She screamed again, he threw her onto the floor. Defendant put his hands on Serena's face and sat on her with his legs straddling her waist. She felt as if she could not breathe. She bit defendant's finger and told him she would cooperate if he let go of her face. He let her go and told her to take her pants off, and that he would kill her if she did not cooperate. Defendant began to masturbate, then he put Serena's hand on his penis and had her rub him for 30 or 40 seconds until he had an erection. He tried to insert his penis into her vagina, causing Serena pain. He then applied a lubricant to Serena's vagina and inserted his penis. During intercourse, he told her that she should kiss him and tell him she loved him, that she would have his baby, and that she had better keep the baby. When defendant was finished, he told her he would kill her if she told the police what had happened.
> After Serena left the trailer, she took a shower, then made telephone calls to her sister, Alicia, and her best friend, Kelly, and told them she had been raped. She was crying and hysterical during her phone calls to Alicia and Kelly. Alicia immediately went to the trailer and took Serena to the police station.
> As a result of the attack, Serena had a cut by her eye, a scratch on her cornea, a sore jaw, facial bruises and lacerations, bruises and scratches on her back and arms, and a scratch on her genitals. Semen recovered from Serena's vaginal area was identified as defendant's. [Footnote omitted.]
> Two witnesses testified that defendant had assaulted them in the past. Desiree testified that in October 1990, when she was 13 years old, defendant followed her off a bus, grabbed her from behind and carried her to the side of a building, and raped her. During the attack, he told her he would kill her if she moved. He followed her home, and told her he knew he had gotten her pregnant; that if she had a girl, he wanted to name it Mercedes, and if it were a boy, he wanted to name it Jermaine. He also told her his name was Jermaine Casey.
> Stacy testified that in December 1990, when she was 15 years old, she and a friend met defendant and another man at a bowling alley. The men suggested they all go to a party, but drove the group to a two-room motel unit instead. The other man left, and Stacy's friend fell asleep. Defendant went with Stacy into the back room. There he threw her to the floor; when she tried to scream he covered her mouth, and she screamed again. Defendant told her he

would kill her if she screamed again, and began choking and smothering her, and removed her overalls and underpants. Stacy drifted in and out of consciousness as a result of the smothering and choking. When Stacy's friend walked into the room, defendant jumped up, said Stacy had "wanted it," and left.

The defense theory was that defendant and Serena had engaged in consensual sex. The manager of the mobile home park testified that he saw Serena after she left defendant's trailer, and she was not crying. He also testified that the trailers were approximately six feet apart, and that he had not heard anyone screaming on the day of the rape. An occupant of the trailer next door to defendant testified that he could normally hear noises such as conversations or the television, that he was working building shelves at home on the afternoon of July 20, but that he heard no screaming, banging, or any noises that afternoon. Another occupant of the same trailer also testified she did not hear screaming or other unusual noises from defendant's trailer that afternoon. [Footnote omitted.]

Ex. E at 2-4.

## STANDARD OF REVIEW

A district court may not grant a petition challenging a state conviction or sentence on the basis of a claim that was reviewed on the merits in state court unless the state court's adjudication of the claim: "(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established federal law, as determined by the Supreme Court of the United States; or (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d). The first prong applies both to questions of law and to mixed questions of law and fact, *Williams (Terry) v. Taylor*, 529 U.S. 362, 407-09 (2000), while the second prong applies to decisions based on factual determinations, *Miller-El v. Cockrell*, 537 U.S. 322, 340 (2003).

A state court decision is "contrary to" Supreme Court authority, that is, falls under the first clause of § 2254(d)(1), only if "the state court arrives at a conclusion opposite to that reached by [the Supreme] Court on a question of law or if the state court decides a case differently than [the Supreme] Court has on a set of materially indistinguishable facts." *Williams (Terry)*, 529 U.S. at 412-13. A state court decision is an "unreasonable application of" Supreme Court authority, falling under the second clause of § 2254(d)(1), if it correctly identifies the governing legal principle

3

from the Supreme Court's decisions but "unreasonably applies that principle to the facts of the prisoner's case." *Id.* at 413. The federal court on habeas review may not issue the writ "simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly." *Id.* at 411. Rather, the application must be "objectively unreasonable" to support granting the writ. *Id.* at 409.

Under 28 U.S.C. § 2254(d)(2), a state court decision "based on a factual determination will not be overturned on factual grounds unless objectively unreasonable in light of the evidence presented in the state-court proceeding." *Miller-El*, 537 U.S. at 340; *see also Torres v. Prunty*, 223 F.3d 1103, 1107 (9th Cir. 2000).

When there is no reasoned opinion from the highest state court to consider the petitioner's claims, the court looks to the last reasoned opinion, in this case that of the California Court of Appeal. *See Ylst v. Nunnemaker*, 501 U.S. 797, 801-06 (1991); *Shackleford v. Hubbard*, 234 F.3d 1072, 1079, n. 2 (9th Cir. 2000).

## DISCUSSION

### I.   Limitation on Cross-Examination

Desiree was one of the two witnesses who testified that petitioner had attacked her in the past. The trial court refused to allow petitioner's attorney to ask Desiree if she had falsely accused another man of committing a sexual assault on her. Ex. E at 12. The trial court first barred the question on grounds that the evidence it asked for related to the witness' sexual conduct, but perhaps realizing that this was not the case, then disallowed it on grounds that defense counsel did not have a "good faith" basis for the line of inquiry and that the answer would be irrelevant. *Id.*

The California Court of Appeal held that the trial court implicitly determined that there was insufficient support for asking the question, and that as a matter of California evidence law that determination was not unreasonable. *Id.* at 13.

4

As to the claim that the limitation on cross-examination violated the federal Constitution, the court of appeal noted that enforcing "'ordinary rules of evidence'" does not violate the right to confrontation or due process, and that trial courts have the power to control admission of evidence in the interests of "'orderly procedure and avoidance of prejudice.'" *Id.* at 14 (quoting *People v. Gurule*, 28 Cal. 4th 557, 620 (2002)). The court then said: "As discussed above, the trial court made a reasonable determination that the proposed line of questioning was not relevant to the issues before the court." *Id.* at 14-15.

The court of appeals also held that "any constitutional error was harmless." *Id.* at 15. This was because (1) the victim's account of the rape was "consistent with both her demeanor during her conversations after the attack and her physical injuries;" (2) the impeachment information did not go directly to Desiree's account of her rape, but involved her supposed allegations against someone else; (3) and Desiree's account was corroborated by the similarity of her account to that of the victim here and the account of another prior attack given by witness Stacy. *Id.* at 15.

Petitioner contends that the trial court's refusal to allow defense counsel to ask Desiree about supposed prior false accusations of sexual abuse violated his due process and Confrontation Clause rights. Respondent contends that this issue is not exhausted and that the claim is without merit.

**A.    Exhaustion of State Court Remedies**

Respondent argues in her answer that petitioner did not fairly present to the California Supreme Court his claim that the restriction on his impeachment of Desiree violated his constitutional rights. She concedes that petitioner raised constitutional claims in the California Court of Appeal, but asserts that his petition for review filed with the California Supreme Court presented only a state law claim.

Petitioners in state custody must challenge the basis of their confinement in state judicial proceedings before seeking relief in federal court. 28 U.S.C. § 2254(b),(c). The exhaustion-of-state-remedies doctrine reflects a policy of federal-

5

state comity to give the state "the initial 'opportunity to pass upon and correct alleged violations of its prisoners' federal rights.'" *Picard v. Connor*, 404 U.S. 270, 275 (1971) (citations omitted).  The state's highest court must be given an opportunity to rule on constitutional claims, even if the review is discretionary.  *O'Sullivan v. Boerckel*, 526 U.S. 838, 845 (1999).

It is not sufficient to raise only the facts supporting the claim; rather, "the constitutional claim . . . inherent in those facts" must be brought to the attention of the state court.  *Picard*, 404 U.S. at 277.  State courts must be alerted to the fact that prisoners are asserting claims under the United States Constitution in order to be given the opportunity to correct alleged violations of federal rights.  *Duncan v. Henry*, 513 U.S. 364, 365-66 (1995).  A litigant wishing to raise a federal issue can easily indicate the federal law basis for his claim in a state court petition or brief, for example, by citing in conjunction with the claim the federal source of law on which he relies or a case deciding such a claim on federal grounds, or by simply labeling the claim "federal."  *Baldwin*, 541 U.S. at 32.  A claim is "fairly presented" only if the petitioner either referenced specific provisions of the federal constitution or federal statutes, or cited to federal or state case law analyzing the federal issue.  *Peterson v. Lampert*, 319 F.3d 1153, 1158 (9th Cir. 2003) (en banc) (holding that a federal claim can be fairly presented by citation to state cases analyzing the federal issue).

In his petition for review to the California Supreme Court, petitioner heads this issue thus:  "REVIEW IS APPROPRIATE TO DETERMINE IN A SEX CRIMES PROSECUTION WHAT CONSTITUTES A GOOD FAITH BELIEF FOR PURPOSES OF QUESTIONING A WITNESS ABOUT MAKING PRIOR FALSE ACCUSATIONS OF SEXUAL MISCONDUCT."  Ex. F (Appellant's Petition for Review by the California Supreme Court) at 24.

In the discussion following this heading petitioner sets out the background of the issue, reciting what happened in trial court over a couple of pages.  *id.* at 24-26.  This paragraph follows:

> On appeal, Mr. Casey argued that the trial court violated his constitutional rights to confrontation and due process when it excluded defense counsel's cross-examination of [Desiree] regarding whether she had made a prior false allegaiton of sexual misconduct. (AOB 52-67, citing among other cases *Olden v. Kentucky* (1988) 488 U.S. 227, 232, *Crane v. Kentucky* (1986) 476 U.S. 683, 690-691, *Delaware v. Van Arsdall* (1986) 475 U.S. 673, 679, *Davis v. Alaska* (1974) 415 U.S. 308, 319-320, *Chambers v. Mississippi* (1973) 410 U.S. 284, 302, *Washington v. Texas* (1967) 388 U.S. 14, 23, *People v. Alvarez* (1996) 14 Cal.4th 155, 201, *People v. Chandler*, (1997) 56 Cal.App.4th 703, 711, and *People v. Franklin* (1994) 25 Cal.App.4th 328, 335.) The appellate court held that the trial court reasonably found defense counsel did not have a good faith belief that the accusation by [Desiree] was false. (Opinion at 13-14.)

Ex. F at 26.

Following this paragraph petitioner launches into his argument that the trial court was wrong to conclude that defense counsel had no basis for a good faith belief that the witness had falsely accused another person. *Id.* There are no further references to the federal Constitution, nor are there any obvious constitutional arguments. *Id.* at 27-28.

The exhaustion issue boils down to this: Was the paragraph quoted above sufficient to alert the California Supreme Court to petitioner's federal issues? The best arguments that he did not are (1) that the quoted paragraph on its face only purports to describe what petitioner contended in the court of appeal, not what he was contending in the petition for review, and (2) that his argument, both in the heading of the issue and in the argumentative portion of the discussion, following the quoted paragraph, went only to the state law question of the correctness of the trial court's "good faith belief" determination. The best argument that he did exhaust is that some courts have held that merely citing to a state case which discusses federal law, much less a federal case, is sufficient to alert the state appellate court that a federal claim is being made. *See, e.g., Peterson v. Lampert*, 319 F.3d 1153, 1157-58 (9th Cir. 2003) (holding that for "fair presentation" purposes, citation to state cases discussing federal claims to be treated the same as citation to federal cases);

7

*Lyons v. Crawford*, 232 F.3d 666, 670 (9th Cir. 2000), *amended*, 247 F.3d 904 (9th Cir. 2001) (federal claim may be fairly presented simply by citing a federal case which discusses the federal law applicable to the claim).

It seems surprising that merely citing a federal case is sufficient to fairly present a federal constitutional claim to a state court, especially given that some courts which so hold probably would not themselves consider on the merits a claim raised in so cavalier a manner, *see, e.g.*, *Knight v. Kenai Peninsula Borough School Distrtict*, 131 F.3d 807, (9th Cir. 1997) ("'[W]e will not ordinarily consider matters on appeal that are not specifically and distinctly raised and argued in appellant's opening brief.'") (quoting *International Union of Bricklayers & Allied Craftsman v. Martin Jaska, Inc.*, 752 F.2d 1401, 1404 (9th Cir. 1985)), but the rule is well-established. In view of this, the court concludes that the claim is exhausted. And in any case this court may deny a petition on the merits even if it is unexhausted. *See* 28 U.S.C. § 2254(b)(2). As discussed below, petitioner's claim fails on the merits.

**B.     Merits**

Petitioner claims that the trial court violated his due process and confrontation rights by refusing to allow him to ask Desiree if she had made prior false accusations of sexual assault. Petitioner does not challenge the California Court of Appeal's summary of the background for this claim:

> During cross-examination, Desiree testified that she had given a statement to the police around the time of the attack, but that she had never testified about it, and that on a different occasion she had reported to the police a sexual assault by someone else. At a bench conference, defense counsel told the court he intended to ask Desiree whether her prior accusation had been false. He said he had a good faith belief, based on what defendant had told him, that Desiree had falsely accused other people in the past, and stated his belief that defendant was not charged with the assault against Desiree [about which she testified in this case] because she had made similar accusations on other occasions. The trial court first indicated it would not allow the question because it related to Desiree's sexual conduct, then, after defense counsel said he believed Desiree had lied about previous assaults, the court stated: "You don't have any evidence. You don't have any good faith belief. I don't think so. I'm not going to allow the question." The court also "sustain[ed] the objection as irrelevant." Defendant contends this ruling was erroneous and deprived him of his constitutional right to cross-

8

examination of adverse witnesses.

Ex. E at 12.

The trial court's exclusion of the question did not violate California law. *See id.* at 14 ("we see no abuse of discretion [in the exclusion]);" *Bradshaw v. Richey*, 126 S. Ct. 602, 604 (2005) (state court's interpretation of state law, including one announced on direct appeal of the challenged conviction, binds a federal court sitting in habeas corpus). The only question here is whether that exclusion, proper though it was under California law, violated due process or petitioner's rights under the Confrontation Clause. *See Holmes v. South Carolina*, 547 U.S. 319, 1731 (2006) (although state lawmakers have "broad latitude" to establish rules excluding evidence in criminal trials, that latitude has constitutional limits). That is, he contends his constitutional right to put on a defense was violated by the trial court's application of the California rule.

Regardless of the amendment in which the right to a defense is grounded, the analysis is the same. *See Holmes,* 547 U.S. 319, 1731 (2006) (whether right is rooted in the Due Process Clause of the Fourteenth Amendment or Compulsory Process Clause or Confrontation Clause, Constitution guarantees meaningful opportunity to present defense, which is abridged by state evidence rules that infringe on weighty interest of accused and are arbitrary or disproportionate to their purposes); *Crane v. Kentucky*, 476 U.S. 683, 690-91 (1986) (right to present a defense may be rooted in the Fourteenth Amendment's Due Process Clause or in the Sixth Amendment's confrontation or compulsory process clauses); *see also Rock v. Arkansas*, 483 U.S. 44, 56-62 (1987) (right to testify arising from the Fourteenth Amendment's due process clause, Sixth Amendment's Compulsory Process Clause, and Fifth Amendment's right not to be compelled to testify). The Ninth Circuit has summarized the rule as "states may not impede a defendant's right to put on a defense by imposing mechanistic (*Chambers*) or arbitrary (*Washington* and *Rock*) rules of evidence." *LaGrand v. Stewart*, 133 F.3d 1253, 1266 (9th Cir. 1998)

(referring to *Chambers v. Mississippi*, 410 U.S. 284 (1973) (due process case); *Washington v. Texas*, 388 U.S. 14 (1967) (due process case); and *Rock v. Arkansas*, 483 U.S. 44 (1987) (due process. compulsory process, Fifth Amendment's right not to testify).

Although defendants have a right to put on a meaningful defense, as the Court said in *Delaware v. Van Arsdall*, 475 U.S. 673 (1986), a Confrontation Clause case:

> It does not follow, of course, that the Confrontation Clause of the Sixth Amendment prevents a trial judge from imposing limits on defense counsel's inquiry into potential bias of a prosecution witness. On the contrary, trial judges retain wide latitude insofar as the Confrontation Clause is concerned to impose reasonable limits on such cross-examination based on concerns about, among other things, harassment, prejudice, confusion of issues, the witness' safety, or interrogation that is repetitive or only marginally relevant. And as we observed earlier this Term, "the Confrontation Clause guarantees an opportunity for effective cross-examination, not cross-examination that is effective in whatever way, and to whatever extent, the defense might wish."

*Id.* at 679 (quoting *Delaware v. Fensterer*, 474 U.S. 15, 20 (1985)). That is, to avoid violating the Confrontation Clause, state restrictions on cross-examination must be "reasonable" and "may not be arbitrary or disproportionate to the purposes they are designed to serve." *Fowler v. Sacramento County Sheriff's Dept.*, 421 F.3d 1027, 1037 (9th Cir. 2005).

Regardless, then, of whether the claim is considered under the Due Process Clause or the Confrontation Clause, the analysis is similar: Is the California evidentiary rule as applied here unreasonable, arbitrary or disproportionate to the purpose it is intended to serve?

Two Ninth Circuit cases are instructive. In *Fowler*, a case with some factual similarities to this one, the Ninth Circuit held that the trial court violated the petitioner's Confrontation Clause rights by excluding cross-examination of the alleged molestation victim about two previous abuse allegations she had made. *Id.* at 1032-33. Defense counsel in that case made an extensive proffer of the

10

proposed cross, based on the victim's interview with an "interview specialist" at the "Multi-Disciplinary Interview Center" and police reports of the second of the two prior cases. *Id.* at 1031-32. In the first of the two prior cases counsel expected the cross-examination to show that the perpetrator was convicted; counsel's argument was that because of the first of the two priors the victim was "super-sensitive" and "prone to over-react," which led her to make the accusation involved in the second prior, and presumably the accusation for which Fowler was on trial. *Id.* at 1032-33. In the second prior a police report was made but the police concluded that the complaint was "unfounded," "apparently because [the victim's] statements were uncorroborated and because [the victim's mother] contradicted [the victim]." *Id.* at 1032.

The Ninth Circuit concluded that the cross-examination would have tended to show that the victim over-reacted in the second prior, and perhaps, as a result of the police report in the second prior reciting that the victim's mother had contradicted the victim, that the victim had lied in that case – and might be lying again. *Id.* at 1038-39. The court concluded that the excluded cross-examination was such as to reasonably cause the jury to question the victim's testimony, and that the countervailing considerations – consumption of time, jury confusion, or embarrassment to the victim – did not outweigh the value of the proposed cross-examination, so Fowler's Confrontation Clause rights were violated. *Id.* at 1041. The court then found that the state court's holdings to the contrary were unreasonable under the AEDPA and that the constitutional violation was prejudicial. *Id.* at 1041-43.

In *Perry v. Rushden*, 713 F.2d 1447 (9th Cir. 1983), the court considered whether exclusion of evidence which suggested that the crime was committed by someone else violated due process and the compulsory process clause. *Id.* at 1448-49. Under California law such evidence is inadmissible "'if it simply affords a possible ground of suspicion against such person; rather, it must be coupled with

11

substantial evidence tending to directly connect that person with the actual commission of the offense.' *People v. Green*, 27 Cal. 3d 1, 22 (1980)." *Id.* at 1449. This evidentiary rule is analogous to the one at issue here, which bars asking questions on cross-examination for which there is insufficient support.

In *Perry* the defendant attacked a woman walking in Golden Gate Park. *Id.* at 1448-49. At trial the defense sought to put on two witnesses who would say they had been sexually attacked by someone named Wolfe in Golden Gate Park. *Id.* at 1449. Wolfe had been convicted of the offenses, one of which was three years before the attack on the *Perry* victim and one of which was only an hour before the attack on her. *Id.* The trial court disallowed the evidence on grounds that the only physical similarity between Wolfe and the defendant was their race, and nothing else about the offences was similar. *Id.* The Ninth Circuit held that "the defendant's general right to present evidence is undeniably strong; yet the state's legitimate interest in reliable and efficient trials is also compelling," *id.* at 1451, that in our system state courts have considerable freedom to develop their own rules, and that a balancing of these interests is necessary when determining if there has been a constitutional violation. *Id.* at 1451-53.

> In evaluating the significance of the evidence, the court should consider all of the circumstances: its probative value on the central issue, its reliability, whether it is capable of evaluation by the finder of fact, whether it is the sole evidence on the issue or merely cumulative, and whether it constitutes a major part of the attempted defense. The weight of the state's interest likewise depends on many factors. The Court must determine the purpose of the rule, its importance, how well the rule implements this purpose, and how well the purpose applies in the case at hand. The court must give due weight to the substantial state interest in preserving orderly trials, in judicial efficiency, in excluding unreliable or prejudicial evidence.

*Id.* at 1452-53. The court noted that "there clearly is some point at which evidence may be so lacking in probity and so productive of confusion that it may constitutionally be excluded," *id.* at 1453-54, and concluded that *Perry* was such a case, *id.* at 1455.

This case differs from *Fowler*, the first of the cases discussed above, in some

12

important ways.  The witness involved here was not the victim but another person who claimed to have been abused by petitioner.  The significance of impeachment, though still substantial, is less with such a witness than with the victim.  Another difference is the sufficiency of the record; in this case, the only support counsel offered for his desire to ask the question on cross is that his client had told him that the witness had falsely accused other people in the past.  This contrasts with the extensive proffer in *Fowler*, which was based on the victim's interview and on police reports and detailed why there was reason to suspect the truthfulness of the purported victim.  *See* 421 F.3d at 1032-33.  Also, in this case Desiree's version of the prior assault on her – with its odd fact of the assailant having told her that she would have his baby and should name it after him if it were a boy, ex. E at 3 – is strikingly similar to the victim's story here, that petitioner told the victim that she would have his baby and had better keep the baby, ex. E at 2.

      The importance of *Perry* lies in its recognition that serious weight must be accorded the state's interest in not wasting trial time on collateral matters and in excluding unreliable or "prejudicial" evidence.  *See Perry*, 713 F.2d at 1452.  This interest is important in every case, whereas the interest of the defendant in performing the proffered cross-examination will vary from case to case.  In this case that interest is slight because of the very weak basis for the question – as the California Court of Appeal noted.  Ex. E at 13-15; *see Van Arsdall*, 475 U.S. at 679 (Confrontation Clause does not prevent a trial judge from imposing reasonable limits on cross-examination based on concerns of harassment, prejudice, confusion of issues, witness safety or interrogation that is repetitive or only marginally relevant).  The application of the California evidentiary rule in this case was reasonable and neither arbitrary nor disproportionate, so petitioner's rights were not violated.  *See Fowler*, 421 F.3d at 1037 (standard).

      Because his rights were not violated, the rejection of this claim by the California courts could not have been contrary to, or an unreasonable application of,

13

clearly-established United States Supreme Court authority. And even if it is assumed for the sake of argument that barring the cross-examination violated petitioner's rights, the contrary holdings of the state courts were not unreasonable, given the closeness of the question and the imprecise standards discussed above. Habeas relief will be denied as to this claim.

**III.     Admission of Evidence of Prior Sex Offenses**

In his second claim petitioner contends that the admission of evidence of his prior acts of sexual assault, under section 1108 of the California Evidence Code, violated his right to due process.[1]

Section 1108 of the California Evidence Code is the exception to the general rule, codified in section 1101, that evidence of a person's character is inadmissible to prove a defendant's conduct on a specific occasion. Section 1108 allows the admission of evidence of prior sexual offenses, subject to balancing the evidence's probative value against its prejudicial effect in accordance with Evidence Code section 352.[2] At his trial, the court heard objections that the admission of evidence of prior sexual assaults by the petitioner would be too prejudicial. The court acknowledged the undeniable prejudice, but stated, "I do think the conduct comes squarely within that contemplated, as I said, by the legislature in enacting Evidence Code 1108 . . . the Court does find that the evidence is more probative than prejudicial and so the Court's going to permit the People to produce evidence of

---

[1] The court notes that in the petition's "supporting facts" section for this issue, petitioner says that his trial counsel was ineffective in failing to object "on meritorious grounds" to the section 1108 evidence" and that the fact counsel objected shows there could be no conceivable tactical reason for failing to do so. Petitioner does not say what grounds he thinks would have been meritorious, so even if this is intended as a separate ground for relief, it fails to "state facts that point to a 'real possibility of constitutional error.'" Rule 4 Advisory Committee Notes (quoting *Aubut v. Maine*, 431 F.2d 688, 689 (1st Cir. 1970). Petitioner thus has failed to adequately set out a claim for relief as to any putative ineffective assistance claim related to counsel's objection, and the issue will not be considered further.

[2] Under Evidence Code section 352, a trial court may exclude evidence if its probative value is substantially outweighed by the probability that its admission will necessitate undue consumption of time or create a substantial danger of undue prejudice, of confusion of the issues, or of misleading the jury.

14

these three different priors." Ex. E at 34.  In its unpublished opinion, the California Court of Appeal upheld the trial court's decision.  The court said, "Our Supreme Court has considered and rejected the contention that section 1108 violates due process, noting in the course of its decision that section 352 provides a safeguard that supports the constitutionality of section 1108." Ex. E at 7 (*citing People v. Falsetta*, 21 Cal. 4th 903, 910-922 (1999)).

### A. Lack of Clearly-Established Supreme Court Authority

Petitioner argues that the evidence of prior sexual assaults was admitted to show propensity and that this is a violation of due process.  The United States Supreme Court has never held that admission of evidence of prior crimes to show propensity violates the right to due process.  *Estelle v. McGuire*, 502 U.S. 62, 75 n. 5 (1991) (declining to rule on the constitutionality of propensity evidence); *Garceau v. Woodford*, 275 F.3d 769, 774 (9th Cir. 2001).

Because habeas relief in this AEDPA case cannot be granted unless the state court's decision was contrary to, or an unreasonable application of, clearly-established Supreme Court authority, and there is no clearly-established Supreme Court authority, habeas relief could not be granted even if the court were to hold that petitioner's due process rights were violated – which they were not, as discussed below.

### B. Due Process

A state court's evidentiary ruling is not subject to federal habeas review unless the evidentiary ruling violates federal law, either by infringing upon a specific federal constitutional or statutory provision or by depriving the defendant of the fundamentally fair trial guaranteed by due process.  *Pulley v. Harris*, 465 U.S. 37, 41 (1984).  A federal court cannot disturb on due process grounds a state court's decision to admit evidence of prior bad acts unless the admission was arbitrary or so prejudicial that the trial was rendered fundamentally unfair.  *See Colley v. Sumner*, 784 F.2d 984, 990 (9th Cir. 1986).

15

As the California Supreme Court noted in *Falsetta*, the rule against propensity evidence is venerable.  However, this rule was never absolute.  *See Falsetta*, 21 Cal.4th at 913-16.  Although every jurisdiction in the United States has a rule excluding propensity evidence, courts have routinely made exceptions in cases of prosecutions for sex offenses, either through carving out specific exceptions for sex offenses, through stretching the use of traditional exceptions, or through making exceptions for evidence of "lustful disposition."  *Id.*; *see also United States v. LeMay*, 260 F.3d 1018, 1025-26 (9th Cir. 2001).

While the Ninth Circuit has not specifically ruled on the constitutionality of section 1108, several circuits have upheld the use of propensity evidence under Federal Rules of Evidence 413-414.[3]  *See, eg., United States v. Castillo*, 140 F3d. 874, 881 (10th Cir. 1998); *United States v. Mound*, 149 F3d. 1427 (8th Cir. 1992).  In this jurisdiction, the Ninth Circuit affirmed the constitutionality of Rule 414 in *LeMay*.  The court held in *LeMay* that Rule 414 is not unconstitutional because it is limited in its function by Rule 403.  *LeMay, 260 F.3d* at 1026-27.  Rule 403 directs judges to exclude any evidence submitted under Rule 414 that is more prejudicial than probative.  *Id.* at 1027.  The court reasoned that this balancing process eliminates any due process concerns from Rule 414, stating: "[a]s long as the protections of Rule 403 remain in place to ensure that potentially devastating evidence of little probative value will not reach the jury, the right to a fair trial remains adequately safeguarded."  *Id.* at 1026.

The reasoning of *Le May* applies equally to this case because the California rules are analogous to the federal rules.  Evidence that is admissible under section 1108 is limited by section 352.  Cal. Evid. Code § 1109(a)(1).  Section 352 parallels

---

[3] The California Supreme Court noted that Evidence Code section 1108 was adopted after Federal Rule 413 and was modeled on it.  Rule 413 provides in pertinent part: "(a) In a criminal case in which the defendant is accused of an offense of sexual assault, evidence of the defendant's commission of another offense or offenses of sexual assault is admissible, and may be considered for its bearing on any matter to which it is relevant."  Fed. R. Evid. 413 (a).

16

Federal Rule of Evidence 403 because it permits a trial judge to exclude evidence when its probative value is substantially outweighed by its prejudicial effect. Cal. Evid. Code § 352. As the California Supreme Court held in *Falsetta*, 21 Cal.4th at 913, the requirement under section 352 to balance the prejudicial effect of the evidence against its probative value ensures that evidence admitted under section 1108 will not infringe on the right to a fair trial guaranteed by the Due Process Clause. The trial court here expressly conducted a balancing of the proposed testimony's probative value against the risk of undue prejudice. The trial court clearly recognized the risk of prejudice to the defendant, and nevertheless ruled that the evidence was probative and exactly the type of evidence the legislature contemplated. Ex. E at 32. Petitioner's due process rights were not violated.

### C. Conclusion

For the above reasons, petitioner's claim that he is entitled to habeas relief because admission of evidence under Rule 1108 violated his due process rights is without merit.

## IV. Lesser-Included Offense Claim

Petitioner's final claim is that the trial court "should have permitted the jury to convict [petitioner] of the lesser included offense of unlawful sexual intercourse." Pet. at 8. He makes this claim even though his attorney appears to have deliberately chosen for tactical reasons not to request the instruction. Ex. C-2 at 532-535, 549.

This court does not need to reach whether the decision to not instruct the jury on unlawful sexual intercourse was in error or whether such error was invited or harmless because under the law of this circuit, this claim does not raise a federal question. In *Solis v. Garcia* the Ninth Circuit Court of Appeals ruled that "the failure of a state court to instruct on lesser included offenses in a non-capital case fails to present a federal constitutional question and will not be considered in a federal habeas corpus proceeding." *Solis v. Garcia*, 219 F.3d 922, 929 (9th Cir. 2000) (*quoting James v. Reese*, 546 F.2d 325, 327 (9th Cir. 1976)).

17

Petitioner's claim that the trial court erred in failing to instruct on a lesser-included offense does not raise a federal question. Consequently, the state courts' rejection of this claim was not contrary to, or an unreasonable application of, clearly established federal law as determined by the Supreme Court. Petitioner is not entitled to habeas corpus relief on this basis.

## CONCLUSION

For the foregoing reasons, the petition for a writ of habeas corpus is **DENIED**. The clerk shall close the file.

**IT IS SO ORDERED.**

Dated: July 30, 2007.

PHYLLIS J. HAMILTON
United States District Judge

G:\PRO-SE\PJH\HC.04\CASEY749.RUL.wpd